*103160026 3*

CJ-15-6719
Timmons

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

ANGELA BEAUDIN, )
)
Plaintiff, )
)
vs. ) CASE NO.: CJ-2015-6719
)
FENTON NISSAN OF ARDMORE, INC. )
and RBS CITIZEN'S BANK )
)
Defendants. ) The Honorable Judge _____

## PETITION

COMES NOW the Plaintiff Angela Beaudin (hereafter Angela), by and through their attorneys of record, M. Kathi Rawls and Minal Gahlot of Rawls Gahlot, PLLC and for their cause of action against the Defendants, Fenton Nissan of Ardmore, Inc. (Fenton) and RBS Citizen's Bank, (Citizen's) state to the Court:

### VENUE AND JURISDICTION

1. This action arises out of Defendant Fenton's fraudulent and deceptive trade practices pursuant to the Oklahoma Consumer Protection Act and various closely related state law claims which arise from a common nucleus of operative facts involving Defendant's fraud involved in the formation of a Retail Installment Sales Contract generally.

2. Venue and jurisdiction is proper as Defendant Fenton is an Oklahoma Corporation with its service agent located in the County of Oklahoma.

3. RBS Citizens, Fenton's Assignee, also may be served through its head teller located in Oklahoma County.

### STATEMENT OF FACTS SUPPORTING EACH OF PLAINTIFF'S CLAIMS
(Plaintiffs incorporate ¶¶1-3 as though fully restated)

1


EXHIBIT 3

4. On or about December 6th, 2014, the Beaudins were shopping on the internet for a used automobile.

5. An advertisement for Fenton caught the Beaudin's attention because Fenton was offer up to $5000 "cash back" if they purchased a car from Fenton.

6. The Beaudins were in need of some extra cash and also needed a good used car so they decided to shop at Fenton's

7. The Beaudins drove from their home in Gainesville, TX to Ardmore OK to meet with a Fenton salesman on December 13th, 2014.

8. Upon arrival at Fenton's dealership, the Beudins immediately noticed that Fenton did not post any prices on any of its used or new inventory.

9. The Beaudins informed Fenton's salesman that "they needed a safe, low mileage, fuel efficient car to drive back in forth to Dallas for Mr. Beaudin's job, had monthly payment of no more than $350 and must be a model which provided the Beaudins with "cash back" for Christmas presents".

10. The Beaudins both completed credit applications at Fenton's urging.

11. Fenton reviewed both the Beaudin's credit.

12. Despite the knowledge of what the Beaudins wanted, Fenton asked the Beaudin's to test drive a new Nissan, which they did.

13. After waiting for more than an hour, the Beaudins became upset when Fenton's agent disclosed to the Beaudin's that the monthly payment was $670.00; so the Beaudin's left.

14. About 4:00 p.m., Fenton's salesman contacted the Beaudin's and informed them that Fenton had inventory in the Beaudin's price range, asked them to return and offered to pay

the Beaudin's tag, title and license fees (T, T & L) if they would return and purchase a used car.

15. Before they would agree, the Beaudins asked Fenton's salesman if the TT & L would increase the price of the purchase price of the car.

16. Fenton's salesman stated that the TT & L would not increase the purchase price of the car.

17. The Beaudin's were shown several cars by Fenton's salesman which were all priced in their price range.

18. The Beaudin's asked if they could still get "cash back" from Fenton on the purchase, in the amount of $2500.

19. Fenton assured the Beaudin's that Fenton would sell them a 2012 Chevrolet Cruze VIN 1G1PC5SH3C7138609 (the Cruze) for less than $350 per month on a "standard term" and give them $2500 cash back, without raising the purchase price of the car.

20. The Beaudin's relied to their detriment on Fenton's statements, returned to the dealership and were quickly taken on a test drive of the Cruze.

21. After they decided they like the Cruze, the Beaudin's were taken to Fenton's finance department where its agent had already pre-printed all the documents regarding the extension of credit.

22. Fenton's declined to extend credit to Mr. Beaudin as a co-signor but never provided a written adverse action notice to him.

23. Fenton did extend credit to Angela Beaudin (hereafter Angela) pursuant to a Retail Installment Sales Contract (RISC) which was later assigned to RBS Citizens Bank (Citizens)(Exhibit 1, RISC)

3

24. Angela stated she did not want any additional products or warranties.

25. Fenton's agent suggested that Angela purchase the Guaranteed Asset Protection (GAP) policy because it would pay off the loan balance on the Cruze if Angela got in a wreck; to which Angela agreed.

26. Fenton's agent then slid each of the pre-printed documents across to Angela, kept his hand on the document and pointed to each place where Angela should execute.

27. Each document was presented by name and Fenton's agent gave a brief explanation of the document but covered the majority of each document; withdrawing it as soon as Angela executed each one.

28. Angela was given no opportunity to read any of the documents.

29. As soon as Angela completed all of Fenton's documents, Fenton's agent left the room and returned with an envelope filled with documents and the Cruze keys.

30. Angela asked about the $2500 "cash back" check but was falsely told it would be mailed to them in three to five days.

31. After a week, when Fenton's "cash back" check did not arrive, Angela called Fenton and was again falsely told that "the main office was cutting the check and to give it a few more days".

32. The Beaudin's waited another week but still did not receive the $2500 "cash back" check from Fenton.

33. On December 23rd, Angela again called Fenton to ask for the $2500 "cash back" but was again falsely told "the main office was cutting it".

34. Angela responded that the money was for Christmas gifts and she was driving back to Fenton's to pick up the check in person that day.

35. On December 24th, 2014 the Beaudin's returned to Fenton to pick up the $2500 "cash back" check.

36. On or about 30 days after the sale of the Cruze Angela again called Fenton to inquire about the location of the TT & L Check.

37. Fenton falsely stated that the $2500 "cash back" was for the purpose of purchasing the TT & L, that the Beaudin's had signed all the documents and that Fenton had no intention of paying the Beaudin's TT & L in addition to the "cash back".

38. When Fenton told Angela this, she removed the documents from the envelope which had been provided by Fenton.

39. Angela discovered for the first time that Fenton had simply added the "cash back" into the purchase price of the Cruze and had not provided her "cash back" at all.

40. Angela and Jack returned the Cruze to Fenton, rescinding the transaction and dispute that Angela owes anything on Fenton's fraudulently induced credit purchase assigned to Citizens.

41. Because Fenton's RISC contains the mandatory language of the Federal Trade Regulation Rule Concerning Preservation of Consumers' Claims and Defenses[1], Angela and Jack are permitted to assert any claim which they could assert against Fenton against Citizens.

42. Angela and Jack refused to accept Fenton's fraud by continuing to make payments and with this filing rescind the transaction.

43. Upon information and belief, pursuant to its Indirect Lending Agreement with Fenton, Citizens is entitled to demand that Fenton repurchase the fraudulently induced extension of credit.

---

[1] 16 C.F.R. § 433 et seq.

5

44. Upon information and belief, pursuant to its Indirect Lending Agreement with Fenton, Citizens is entitled to indemnification and defense in this matter at Fenton's expense.

45. Instead, Citizens is harassing Angela for the alleged Deficiency Balance and placing her in a false light by falsely informing 3rd parties that she has defaulted on Fenton's assigned credit transaction.

## FIRST, SECOND AND THIRD CAUSE OF ACTION
## FRAUD, FRAUD IN THE INDUCEMENT, AND MISREPRESENTATION
### Against Fenton and Citizen's
(Plaintiffs incorporate ¶¶1-44 as though fully restated)

42. Fenton induced Angela and Jack to purchase the Cruze by falsely telling them that Fenton would be provided $2500 "cash back", which would not be added to their loan on the financed purchase of the Cruze.

43. Angela and Jack relied to their detriment upon Fenton's agent's false statements.

43. If Angela and Jack had known that Fenton was increasing the financed purchase price of the vehicle they would not have signed Fenton's RISC.

44. Fenton induced Angela and Jack to purchase the Cruze by falsely telling them that Fenton would pay their Tag, Title and License fees on the Cruze without increasing the financed cost, which it failed to do.

45. Citizens ratified the fraud when it accepted the payments and continued to make demands from Angela and Jack to make payments despite being informed of Fenton's fraud.

46. As a result of Fenton and Citizens' Breach of Contract and various other violations of law, Angela and Jack are entitled to actual, consequential and exemplary damages plus attorney fees, costs and rescission.

## FOURTH AND FIFTH CAUSES OF ACTION
## BREACH OF CONTRACT AND RESCISSION
### Against Citizens and Fenton
(Plaintiffs incorporate ¶¶1-46 as though fully restated)

47. Angela and Jack assert that Fenton and Citizens breached their oral and written contract by increasing the purchase price, adding the $2500 "cash back" into the amounts financed and failing to pay for their TT & L.

48. As a result of Citizens and Fenton's breach of contract, Angela and Jack are entitled to rescission, their damages, actual and consequential, and attorney's fees and costs.

## SIXTH CAUSE OF ACTION
## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### Against Citizens and Fenton
(Plaintiffs incorporate ¶¶1-48 as though fully restated)

49. Fenton employed deceptive trade practices when they misrepresented vehicle's purchase price and hid the addition of an additional, but unauthorized, add on products, in violation of 15 O.S. § 753.

50. These statements were made before, during and after the transaction, evidencing a willful disregard for honesty on the part of Fenton.

51. Even if presented an opportunity to read Fenton's transactional documents, which Angela was not, Fenton failed to accurately disclose that its $2500 "cash back" payment to her had been added to the finance and purchase price.

52. Fenton covered a majority of its RISC which would have allowed Angela to see that Fenton was adding its $2500 "cash back" into the price of the Cruze or that it had included an additional charge of $2500 for an Extended Warranty, which she had declined to purchase.

53. Angela and Jack relied on Fenton's agent to their detriment.

54. Angela and Jack are entitled to their statutory damages and their attorney fees for each of the violations and failure to accurately disclose the add-on products.

### SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against Citizens and Fenton
### (Plaintiffs incorporate ¶¶ 1-54 as though fully restated)

55. The term "emotional distress" means mental distress, mental pain and suffering, or mental anguish. It includes all highly unpleasant mental reactions, such as fright, horror, grief, humiliation, embarrassment, anger, chagrin, disappointment, and worry.

56. Fenton deceived and fraudulently induced Angela and Jack into the purchase of an automobile which was advertised on the internet.

57. Based upon the false advertising, Angela and Jack were induced by the false advertising, relied to their detriment upon its terms and the statements of Fenton's agent and drove over 90 miles to purchase the Ram for the advertised price..

58. Moreover, when Angela and Jack later visited Fenton attempting to resolve the complaints without litigation, the employees of Fenton treated them unprofessionally and embarrassed them in front of others.

59. As a result of the fraudulent behavior in violation of its contractual obligations, Angela was forced to purchase a very late model motorcycle for her husband, Jack Beaudin, to drive to and from work in the rain and/or snow.

60. Fenton and its agents recklessly caused, or knew there was a substantial probability, that outrageous emotional distress would result to Angela and Jack as a result of their public humiliation and threats of credit defamation.

61. As a result of the betrayal and humiliation by Fenton's employees, Angela and Jack has suffered emotional distress and loss of sleep

8

62. Moreover, Citizens continued to demand payments, wrongfully reported to credit rating authorities, made harassing calls and send deficiency notices to Angela and Jack even after being made aware of Fenton's fraud, further exacerbating Angela and Jack' emotional suffering.

63. Angela and Jack are thus entitled to their damages and attorney's fees.

## EIGHTH, NINTH AND TENTH CAUSES OF ACTION
## NEGLIGENCE, VIOLATION OF THE UNIFORM COMMERCIAL CODE
## AND FALSE LIGHT
### Against Citizens and Fenton
(Plaintiffs incorporate ¶¶ 1-63 as though fully restated)

64. Angela and Jack informed both Fenton and Citizens regarding their fraudulent experiences at Fenton and both stated there was nothing which could be done.

65. Citizens and Fenton owed a duty to deal honestly with Angela but failed to do so.

66. As a result of the breach of that duty of good faith and fair dealing, Angela has been damaged.

67. Citizens falsely stated that it could not contractually force Fenton to repurchase the loan which Angela asserted was fraudulently induced.

68. Citizens and Fenton owed a duty of good faith and fair dealing with Angela and Jack in regards to the RISC entered into by Fenton, which was later assigned to Citizens.

69. As a result of their negligence, Angela has incurred loss of time from work and actual and consequential damages.

70. Citizens negligently, but falsely, informed Angela and Jack that the only option for them as purchasers was to continue to make all payments as Citizens had no intention of forcing Fenton to repurchase their RISC.

71. Citizens also negligently failed to inform Angela that it intended to dispose of the Cruze or the method and date of the disposition of that property, which eliminated any opportunity to bring any bidders to the sale.

72. As a result, Citizen's disposition of the collateral is commercially unreasonbable.

73. Citizens later provided a Notice of Deficiency which provided no credit for the additional products for which Fenton had charged her. As a result, Angela and Jack are entitled to their actual, consequential and punitive damages.

WHEREFORE premises stated, Plaintiff prays that she be awarded her actual, consequential, statutory and exemplary penalties and damages, and her attorney fees and costs of this action, to be determined by a jury of her peers.

*/s/ Minal Gahlot*

M. Kathi Rawls, OBA #18814
Minal Gahlot, OBA # 22145
Rawls Gahlot PLLC
2404 S. Broadway
Moore, Ok 73160
Phone: 405-912-3225
Email: kathi@rawlsgahlot.com
Email: minal@rawlsgahlot.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**